## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DENKA PERFORMANCE ELASTOMER LLC,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,**<br><br>     **Defendants.** | **CASE NO. 2:23-CV-00147**<br><br>**Hon. Carl J. Barbier**<br><br>**Mag. Michael North** |

## <u>DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ................................................................................................. 1

STANDARD OF REVIEW .................................................................................... 4

BACKGROUND .................................................................................................. 5

I.      EPA RISK ASSESSMENT TOOLS  ........................................................... 5

        A.      Integrated Risk Information ("IRIS") .............................................. 6

        B.      National Air Toxics Assessments ("NATA") ................................... 7

II.     THE INFORMATION QUALITY ACT ..................................................... 8

III.    THE CHALLENGED 2010 ASSESSMENT AND DENIALS ...................... 9

IV.     THIRD PARTY ACTIONS .......................................................................... 9

V.      EPA INVESTIGATIONS AND ENFORCEMENT ................................... 10

VI.     HISTORY OF THIS LITIGATION ........................................................... 11

ARGUMENT ...................................................................................................... 11

I.      THE GOVERNMENT HAS SOVEREIGN IMMUNITY TO ALL OF
        DENKA'S CLAIMS  ................................................................................ 11

        A.      The Declaratory Judgment Act, 28 U.S.C. § 1331, and the
                Information Quality Act Do Not Contain Sovereign Immunity
                Waivers ........................................................................................... 13

        B.      Denka's Claims Do Not Fall within the APA's Waivers of
                Sovereign Immunity ....................................................................... 13

                1.      The 2010 Assessment and Denials Are Not Final Agency
                        Actions for Purposes of Judicial Review under the APA .......... 14

                        a.      IRIS Assessments Do Not Have Any Legal Effect ........ 15

                        b.      Third-Party Actions Have No Effect on Finality
                                under the APA ................................................................ 17

c.    Federal Investigations Do Not Make Actions Final
under the APA.................................................................................18

d.    EPA's Recently-Filed Clean Air Act Enforcement
Action Does Not Make the 2010 Assessment and
Denials Final for APA Review Purposes......................................18

2.    APA Section 701(a)(2) Precludes Judicial Review of the
Denials ..........................................................................................................20

II.    ALL APA CHALLENGES TO THE 2010 ASSESSMENT ARE NOW
TIME BARRED, IF ONE ASSUMES THAT THE 2010 ASSESSMENT
IS A FINAL AGENCY ACTION UNDER THE APA ....................................................21

CONCLUSION...........................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**CASES**

*A.L. Rowan & Son, Gen. Contractors, Inc. v. Dep't of Hous. & Urban Dev.*,
   611 F.2d 997 (5th Cir.1980)...........................................................................................13

*Ades v. United States*,
   No. 22-100442, 2022 WL 1198206 ................................................................................22

*Alabama ex rel. Baxley v. Woody*,
   473 F.2d 10 (5th Cir. 1973)...............................................................................................5

*Alabama-Coushatta Tribe of Tex. v. United States*,
   757 F.3d 484 (5th Cir. 2014)......................................................................................11, 12

*Americans for Safe Access v. U.S. Dep't of Health & Hum. Servs.*,
   No. C 07-01049 WHA, 2007 WL 4168511 (N.D. Cal. Nove 20, 2007)...................20

*American Stewards of Liberty v. Dep't of Interior*,
   960 F.3d 223 (5th Cir. 2020)..............................................................................4, 21, 22

*Anderson v. United States*,
   229 F.2d 675 (5th Cir. 1956)...........................................................................................13

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) ...........................................................................................................5

*Balistrieri v. United States*,
   303 F.2d 617 (7th Cir. 1962)...........................................................................................13

*Barrera– Montenegro v. United States*,
   74 F.3d 657 (5th Cir.1996)...............................................................................................5

*Bender v. Williamsport Area Sch. Dist.*,
   475 U.S. 534 (1986) ...........................................................................................................4

*Bennett v. Spear*,
   520 U.S. 154 (1997) ...............................................................................................2, 14, 15

*Butler v. Denka Performance Elastomer, LLC*,
   No. 18-cv-6685, 2020 WL 2747276 (E.D. La. May 27, 2020)..............................7, 9

*Chem. Manuf. Assoc. v. EPA,*
  28 F.3d 1259 (D.C. Cir. 1994) .............................................................................6, 7, 15

*Dalton v. Specter*,
  511 U.S. 462, 469-70 (1994)) ...........................................................................................17

*Den Norske Stats Oljeselskap As v. HeereMac Vof*,
  241 F.3d 420 (5th Cir. 2001).............................................................................................5

*Dep't of Energy v. Ohio*,
  503 U.S. 607 (1992) ..........................................................................................................12

*Dep't of the Army v. Blue Fox, Inc.*,
  525 U.S. 255 (1999) ..........................................................................................................12

*Dine Citizens Against Ruining Our Env't v. Haaland*,
  59 F.4th 1016 (10th Cir. 2023)...........................................................................................7

*Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*,
  112 F.3d 1283 (5th Cir. 1997).....................................................................................21, 22

*El Bay v. Dominguez*,
  No. 21-10081, 2022 WL 17975467 (5th Cir. Dec. 28, 2022) ...................................5

*Ellis v. Evonik Corp.*,
  604 F. Supp. 3d 356 (E.D. La. May 27, 2022) ..........................................................7

*FAA v. Cooper*,
  566 U.S. 284 (2012) ..........................................................................................................11

*F.D.I.C. v. Meyer*,
  510 U.S. 471 (1994) .....................................................................................................11, 12

*Fam. Farm All. v. Salazar*,
  749 F. Supp. 2d 1083 (E.D. Cal. 2010) ......................................................................20

*Fernandez–Montes v. Allied Pilots Ass'n*,
  987 F.2d 278 (5th Cir. 1993)..............................................................................................5

*Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*,
  313 F.2d 852 (4th Cir. 2002).......................................................................................16, 17

*Fort Bend Cty. v. U.S. Army Corps of Eng'rs*,
  59 F.4th 180 (5th Cir. 2023)................................................................2, 11, 12, 14, 19

iv

*Fortado v. Evonik Corp.,*
No. 22-1518, 2022 WL 4448230 (E.D. La. Sept. 23, 2022) ........................................7

*FTC v. Standard Oil Co.,*
449 U.S. 232 (1980) ........................................................................................18

*Grupo Dataflux v. Atlas Global Grp., L.P.,* ,
541 U.S. 567, 593 (2004) ................................................................................4

*Harkonen v. U.S. Dep't of Just.,*
No. C 12–629, 2012 WL 6019571 (N.D. Cal. Dec. 3, 2012)........................13, 20

*Heckler v. Chaney,*
470 U.S. 821 (1985) .......................................................................................20

*Hindes v. Fed. Deposit Ins. Co.,*
137 F.3d 148 (3d Cir. 1998)............................................................................17

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,*
143 F.3d 1006 (5th Cir. 1998) .........................................................................19

*Howery v. Allstate Ins. Co.,*
243 F.3d 912 (5th Cir. 2001)............................................................................4

*In re Operation of the Mo. River Sys. Litig.,*
363 F. Supp. 2d 1145 (D. Minn. 2004) ............................................................21

*Jackson v. Boone,*
No. 20-3393, 2022 WL 18276710 (E.D. La. Dec. 15, 2022)..............................5

*Koehler v. United States,*
153 F.3d 263 (5th Cir. 1998)...........................................................................11

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1994) .................................................................................4, 12

*Lane v. Pena,*
518 U.S. 187 (1992) .....................................................................................12

*Lujan v. Nat'l Wildlife Fed'n,*
497 U.S. 871 (1990)) ..................................................................................2, 15

*Manchanda v. Lewis,*
No. 21-1088, 2021 WL 5986877 (2d Cir. Dec. 17, 2021) ................................18

*Marbury v. Madison*,
  1 Cranch 137 (5 U.S.) (1803) ................................................................4

*Miss. Com'n on Env'tl Quality v. EPA*,
  709 F.3d 138 (D.C. Cir. 2015) ..........................................................1, 13

*Montez v. Dep't of the Navy*,
  392 F.3d 147 (5th Cir. 2004)................................................................5

*Muslim Advocates v. U.S. Dep't of Just.*,
  No. 18-2137, 2019 WL 3254230 (N.D. Cal. July 19, 2019)....................20

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ........................................................................19, 20

*Nowak v. Ironworkers Loc. 6 Pension Fund*,
  81 F.3d 1182 (2d Cir. 1996)................................................................19

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981)................................................................5

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001)................................................................4

*Robinson v. TCI/US W. Commc'ns Inc.*,
  117 F.3d 900 (5th Cir. 1997)................................................................5

*Ruhrgas AG v. Marathon Oil Co.*,
  52 U.S. 574 (1999) ............................................................................4

*Salt Inst. v. Leavitt*,
  440 F.3d 156 (4 th Cir. 2006)..........................................................13, 20

*Salt Inst. v. Thompson*,
  345 F. Supp. 2d 589 (E.D. Va. 2004)................................................8, 16, 20

*Sisseton–Wahpeton Sioux Tribe v. United States*,
  895 F.2d 588 (9th Cir. 1990)..............................................................22

*Steenholdt v. FAA*,
  314 F.3d 633 (D.C. Cir. 2003) ............................................................20

*Styrene Info. and Rech.. Ctr., Inc. v. Sebelius*,
  944 F. Supp. 2d 71 (D.D.C. 2013) ....................................................3, 20

*Taylor Energy Co. LLC v. United States*,
   No. 20-1720, 2021 WL 1876845 (E.D. La. May 10, 2021) .....................................................12

*Texas v. United States*,
   40 F.4th 205, 220 (5th Cir. 2022) .....................................................................................2, 14

*U.S. Army Corps. of Eng. v. Hawkes Co.*,
   578 U.S. 590 (2016) ...........................................................................................................15

*U.S. Dep't of Just. v. Fed. Lab. Relations Auth.*,
   727 F.2d 481 (5th Cir.1984)................................................................................................15

*United States v. Denka Performance Elastomer, LLC*,
   No. 23-735 (E.D. La. Feb. 28, 2023) ....................................................3, 7, 9, 10, 20

*United States v. Mitchell*,
   445 U.S. 535 (1980) ...........................................................................................................12

*United States v. Mitchell*,
   463 U.S. 206 (1983) ...........................................................................................................12

*United States v. Nordic Vill., Inc.*
   503 U.S. 30 (1992) .............................................................................................................12

*Veldhoen v. U.S. Coast Guard*,
   35 F.3d 222 (5th Cir. 1994)..........................................................................................15, 18

*Voluntary Purchasing Groups, Inc. v. Reilly*,
   889 F.2d 1380 (5th Cir. 1989).............................................................................................13

*Wells v. Ali*,
   304 Fed. App'x 292 (5th Cir. 2008) .....................................................................................5

**STATUTES**

5 U.S.C. § 551 .........................................................................................................................19

5 U.S.C. § 551(4) .....................................................................................................................19

5 U.S.C. § 551(6) .....................................................................................................................20

5 U.S.C. § 551(8) .....................................................................................................................20

5 U.S.C. § 551(10) ...................................................................................................................20

5 U.S.C. § 551(11) ...................................................................................................20

5 U.S.C. § 551(13) ...................................................................................................19

5 U.S.C. § 701(a)(2) ...................................................................................3, 12, 19, 20

5 U.S.C. § 701(b)(2) .................................................................................................19

5 U.S.C. § 702 ................................................................................1, 12, 14, 16

5 U.S.C. § 704 ..........................................................................1, 11, 12, 14, 16

28 U.S.C. § 1331 ...............................................................................1, 12, 13

28 U.S.C. § 2201 ...................................................................................................13

28 U.S.C. § 2401 ...........................................................................................4, 21

42 U.S.C. § 7414(a) .................................................................................................10

42 U.S.C. § 7603 .....................................................................................................10

44 U.S.C. § 3516 note (Pub. L. No. 106-554, § 1(a)(3)) ...................................................8

**FEDERAL RULES OF CIVIL PROCEDURES**

Fed. R. Civ. P. 12(b)(1) ..................................................................................1, 5, 20, 23

Fed. R. Civ. P. 12(h)(3) .............................................................................................5

**FEDERAL REGISTER**

53 Fed. Reg. 20162 (June 2, 1988) ...........................................................................6

58 Fed. Reg. 11490 (Feb. 25, 1993) .........................................................................6

67 Fed. Reg. 8452 (Feb. 22, 2002) ...........................................................2, 8, 14, 16, 21

## INTRODUCTION

Plaintiff Denka Performance Elastomer LLC ("Denka") has asserted four claims under Section 704 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, challenging a 2010 scientific report ("2010 Assessment"), the U.S. Environmental Protection Agency's ("EPA") denial of two subsequent requests to "correct" the 2010 Assessment under the Information Quality Act ("IQA"), and EPA's denial of a request to reconsider the second IQA denial (collectively "Denials").   The 2010 Assessment, part of EPA's Integrated Risk Information System database ("IRIS"), provides human health characterization and dose response information for exposure to chloroprene that can be used (or not) in future risk assessments by federal, state or international agencies.

The Court should dismiss all four of Denka's claims under Federal Rule of Civil Procedure 12(b)(1).   The two sources of subject matter jurisdiction identified in Denka's Complaint—28 U.S.C. § 1331 and the Declaratory Judgment Act—do not contain waivers of the government's sovereign immunity.   *See Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1385 (5th Cir. 1989) (28 U.S.C. § 1331); *Anderson v. United States*, 229 F.2d 675, 677 (5th Cir. 1956) (Declaratory Judgment Act).   The Information Quality Act discussed in Denka's Complaint does not create a cause of action against the government, much less contain a sovereign immunity waiver.   *Miss. Com'n on Env't Quality v. EPA,* 790 F.3d 138, 184-85 (D.C. Cir. 2015).

There also is no applicable sovereign immunity waiver in Sections 702 and 704 of the APA, 5 U.S.C. §§ 702, 704, which, under Fifth Circuit precedent, deprives the Court of jurisdiction because it limits the APA's waiver of federal sovereign immunity to suit.   *See*

1

*Walmart Inc. v. U.S. Dep't of Justice*, 21 F.4th 300, 308 (5th Cir. 2021) (discussing APA Section 702); *Fort Bend Cty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 189 (5th Cir. 2023) (discussing APA Sections 702 and 704).    In a case like this one that seeks review "under the general review provisions of the APA, the 'agency action' in question must be 'final agency action'" under APA Section 704.    *Fort Bend Cty.*, 59 F.4th at 189 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)).    The 2010 Assessment and Denials do not constitute "final agency action" under APA Section 704, because they each fail to: (1) "mark the consummation of the agency's decisionmaking process;" and (2) "be [an action] by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997); *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022) (same).

IRIS assessments are scientific analyses that agencies can choose to consult in developing area- or site-specific health hazard assessments that may, or may not, inform subsequent risk management decisions, rulemakings or enforcement actions.    IRIS assessments themselves do not have any regulatory impact; do not establish any standards, requirements or limitations; do not bind the government or private parties in any way; and do not trigger or determine any rights or obligations.    *See Chem. Mfrs. Ass'n v. EPA,* 28 F.3d 1259, 1263 (D.C. Cir. 1994) (IRIS assessments have no preclusive effect and constrain no one).    The same is true of the Denials, which document EPA's exercise of its discretion under the Information Quality Act "to undertake only the degree of correction that [EPA concludes] is appropriate for the nature and timeliness of the information involved" in the 2010 Assessment.    *See* 67 Fed. Reg. 8452, 8458

2

(Feb. 22, 2002).   Consequently, the 2010 Assessment and Denials cannot satisfy the second prong of the finality test.[1]

To the extent EPA relies upon scientific information contained in the 2010 Assessment in a recently-filed Clean Air Act enforcement action against Denka, Denka may choose to defend itself *in that separate case* by challenging the reasonableness of EPA's reliance on that information *on the facts of that case*.   *See United States v. Denka Performance Elastomer, LLC*, No. 23-cv-35 (E.D. La. Feb. 28, 2023).   This does not make the 2010 Assessment and Denials themselves final—or even agency actions—that are reviewable under the APA, however. Because the 2010 Assessment and Denials are not final agency actions for purposes of APA Sections 702 and 704, the Court lacks subject matter jurisdiction over all of Denka's claims and should dismiss them under Fed. R. Civ. P. 12(b)(1).

Moreover, it is well established that APA Section 701(a)(2), 5 U.S.C. § 701(a)(2), limits the APA waiver of sovereign immunity and bars APA review of agency actions "committed to agency discretion by law" like denials of requests for correction or reconsideration under the Information Quality Act.   *Styrene Info. and Rsch. Ctr., Inc. v. Sebelius*, 944 F.Supp.2d 71, 82 (D.D.C. 2013); *Fam. Farm All. v. Salazar*, 749 F.Supp.2d 1083, 1092-95 (E.D. Cal. 2010). Therefore, even if the Court were to find (or assume) that the Denials are final agency actions for purposes of the APA, Denka's claim challenging them still would have to be dismissed for lack of subject matter jurisdiction.

---

[1]   For the same reasons, Denka also could not state a claim for which relief could be granted under the APA with respect to the 2010 Assessment and the Denials.

Finally, if the Court were to find (or assume) that the 2010 Assessment is a final agency action for purposes of the APA, then Denka still has not identified an applicable waiver of federal sovereign immunity because the six-year statute of limitations in 28 U.S.C. § 2401(a) has run.   *See American Stewards of Liberty v. Dept' of Interior*, 960 F.3d 223, 229 & n.3 (5th Cir. 2020) (holding that this limitations period conditions the APA's waiver of sovereign immunity). Any APA claim accrued when the 2010 Assessment was completed and added to the IRIS database.   The applicable limitations period therefore expired in 2016, depriving this Court of subject matter jurisdiction over Denka's claims challenging the 2010 Assessment.

For all the foregoing reasons, the Court lacks subject matter jurisdiction over all of Denka's claims.   This case therefore should be dismissed with prejudice.

## <u>STANDARD OF REVIEW</u>

The federal courts must satisfy themselves, as a threshold issue, that they have jurisdiction over the matters before them.   *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 593 (2004) (citing *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 (1986)); *F.D.I.C. v. Meyer,* 510 U.S. 471, 475 (1994).   This requirement is based on the principle that "[f]ederal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute."   *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Bender*, 475 U.S. at 541 (citing *Marbury v. Madison*, 1 Cranch (5 U.S.) 137, 173-80 (1803)); *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 583-84 (1999).   Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."   *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).   Courts

4

also must dismiss claims whenever they determine that they lack subject matter jurisdiction. Fed.

R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Parties may challenge the court's subject matter jurisdiction through a motion under

Federal Rule of Civil Procedure 12(b)(1), asserting either a "factual attack" or a "facial attack."

In ruling on a Rule 12(b)(1) motion like this one that presents a factual attack, courts may

evaluate information and materials outside the Complaint, including undisputed facts and the

court's resolution of disputed facts, without converting the motion into one for summary

judgment. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001)

(citing *Barrera-Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996)); *Robinson v.*

*TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997); *Paterson v. Weinberger*, 644 F.2d

521, 523 (5th Cir. 1981); *State of Alabama ex rel. Baxley v. Woody*, 473 F.2d 10, 12 (5th Cir.

1973).    For factual attacks, no presumption of truthfulness attaches to the plaintiff's allegations.

*Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004); *Jackson v. Boone*, No. 20-3393,

2022 WL 18276710 *5 (E.D. La. Dec. 15, 2022).    Moreover, legal conclusions, subjective

characterizations, and conclusory statements should be disregarded.    *See Wells v. Ali*, 304 Fed.

App'x 292, 293 (5th Cir. 2008); *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th

Cir. 1993); *El Bay v. Dominguez*, No. 21-10081, 2022 WL 17975467 *1 (5th Cir. Dec. 28,

2022).

## <u>BACKGROUND</u>

## I.    EPA RISK ASSESSMENT TOOLS

EPA's Office of Research and Development assesses the potential health hazards posed

by numerous substances, and makes that information, and the means for performing future site-

or situation-specific assessments, publicly available in the form of more than eighty different scientific models, ten analytic tools, and more than eighty-five databases. *See e.g.,* Ex. A, Declaration of Chris Thayer, at Att. 1. These different tools, which are not guidance documents, rules or regulations, can be used for many purposes including the development of federal or state rules and regulations, urban and regional planning, public health initiatives, and state or federal site- or situation-specific enforcement action.

A. **Integrated Risk Information System ("IRIS")**

One of those 85 databases, the IRIS database, was first developed in 1986, and has been publicly searchable since 1988. 58 Fed. Reg. 11,490 (Feb. 25, 1993). The IRIS database comprises hundreds of scientific reports developed by EPA's Center for Public Health and Environmental Assessment ("Center") that reflect the assessment of the dose response information and human health hazard posed by oral and inhalation exposure to individual chemicals, groups of chemicals and complex mixtures. Ex. A, at Att. 2.

IRIS assessments and the scientific information in them do not themselves establish any enforceable standards or limits, and do not create or trigger any legal requirements. *See Chem. Mfrs. Ass'n v. EPA,* 28 F.3d at 1263. Instead, they are a publicly-accessible source of information for numerous EPA programs, other federal, state, local and international health agencies, organizations and individuals that "serv[es as a] guide[] in evaluating potential health hazards and selecting a response to alleviate a potential risk to human health." 53 Fed. Reg. 20162 at 20163; *see* Ex. A, at Att. 2.

Among other things, IRIS assessments may be used as scientific support for the development of area- and site-specific health risk assessments, which in turn may (or may not)

6

inform federal risk management decisions addressing those specific factual situations.    Such

risk management decisions in turn may (or may not) result in a formal Agency rulemaking or

enforcement action.    *When finalized*, such rulemakings can be subject to challenge in the U.S.

District Courts or the U.S. Circuit Courts of Appeal (depending on (among other things) the

applicable statutory judicial review provision), based on the agency's reliance on information

from IRIS assessments.    *See Chem. Mfrs. Ass'n*, 28 F.3d at 1262 (addressing procedural and

substantive objections to EPA's use of IRIS assessment information in final EPA rulemaking).

Parties subject to federal enforcement action may likewise raise defenses regarding the enforcing

agency's reliance on IRIS assessment information in that enforcement case.

      **B.**    **National Air Toxics Assessments ("NATA")**

      The NATAs have been superseded by the Air Toxics Screening Assessment, which is

updated annually.    Ex. B, Declaration of Kelly Rimer, at Att. 1.    Like the Air Toxic Screening

Assessment, the NATAs are screening tools issued to help state, local and tribal air agencies

identify which pollutants, emission sources and places they may wish to study further to better

understand possible exposure and risks to public health from emissions of air toxics.    *See Id.*;

ECF 1, ¶¶ 20, 21; *Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1047

(10th Cir. 2023); *see also Butler v. Denka Performance Elastomer, LLC,* No. 18-cv-6685, 2020

WL 2747276 **10-11 (E.D. La. May 27, 2020), *aff'd on other grounds*, 16 F.4th 427 (5th Cir.

2021); *Ellis v. Evonik Corp.*, 604 F.Supp.3d 356, 369 (E.D. La. May 27, 2022); *Fortado v.

Evonik Corp*, No. 22-1518, 2022 WL 4448230 *2 (E.D. La. Sept. 23, 2022).    They were

developed using information from IRIS assessments of hundreds of chemicals, weather data, and

EPA's National Emissions Inventory.   *See* Ex. B, at Att. 1, p. 4/9 ("AirToxScreen's four steps").

## II.      THE INFORMATION QUALITY ACT

Section 515(a) of the Treasury and General Government Appropriations Act for Fiscal Year 2001 is commonly referred to as the Information Quality Act ("IQA").   Pub. L. No. 106–554, § 1(a)(3) (Title V, § 515) (Dec. 21, 2000) (publ. at 44 U.S.C. § 3516 note).   The IQA directs the Office of Management and Budget ("OMB") to issue guidelines that provide "policy and procedural guidance to Federal agencies for ensuring and maximizing the quality, objectivity, utility, and integrity of information . . . disseminated by Federal agencies," including administrative mechanisms for people to seek correction of information that does not comply with OMB's guidelines.   *See id.*; *Salt Inst. v. Thompson*, 345 F.Supp.2d 589, 593 (E.D. Va. 2004).

Pertinent to this case, the resulting OMB guidelines require agencies to "specify appropriate time periods for agency decisions on whether and how to correct information" and "establish an administrative appeal process to review the agency's initial decision."   Guidelines for Ensuring and Maximizing the Quality, Objectivity, Utility, and Integrity of Information Disseminated by Federal Agencies; Republication, 67 Fed. Reg. 8452, 8459 (Feb. 22, 2002). OMB further specified that "Agencies, in making their determination of whether or not to correct information, may reject claims made in bad faith or without justification, and are required to undertake only the degree of correction that they conclude is appropriate for the nature and timeliness of the information involved."   *Id.* at 8458.

8

### III.   THE CHALLENGED 2010 ASSESSMENT AND DENIALS

In September 2010, EPA added an assessment of the human health hazard posed by chloroprene exposure to the IRIS database.   ECF 1, ¶¶ *10, 17.*   In June 2017, Denka submitted an administrative request that EPA correct the 2010 Assessment under EPA's guidelines for implementing the Information Quality Act.   *Id.* ¶ 30.   EPA denied that correction request in January 2018.   ECF 1, ¶ 32.   Denka submitted and then withdrew a request for reconsideration of that denial.   *Id.* ¶¶ 33, 39.

Denka submitted a second request for correction in July 2021, and EPA denied it in March 2022.   *Id.* ¶¶ 40, 46.   Denka submitted a request for reconsideration of the second denial, and EPA denied it in October 2022.   *Id.* ¶¶ 48-49.

### IV.   THIRD PARTY ACTIONS

As early as 2017, private individuals filed tort suits against Denka in state court that were removed to the United States District Court for the Eastern District of Louisiana, based on allegations of harm from chloroprene emissions from the Denka Facility.   *Id.* ¶ 56; *see* ECF 3 (notice of related actions).   The plaintiffs did not allege that the 2010 Assessment established a standard or emission limitation, though some attempted to rely on the risk levels identified in the NATAs.   In one suit, the court held that the NATA does not establish a standard of care because it is "less than a regulation" and EPA "disclaims its regulatory or enforcement value."   *Butler v. Denka Performance Elastomer, LLC,* 2020 WL 2747276 **10-11 & n.11, aff'd on other grounds, 16 F.4th 427 (5th Cir. 2021).

In January 2017, the Louisiana Department of Environmental Quality ("Louisiana DEQ") and Denka—but not EPA—entered into an administrative consent order to reduce chloroprene

emissions from the Denka Facility.   *Id.* ¶ 52.   Denka allegedly complied with the order by 2020.   *Id*.

## V.      EPA INVESTIGATIONS AND ENFORCEMENT

EPA has taken several preliminary, investigatory steps that Denka refers to in its Complaint:

EPA performed a compliance investigation at Denka's neoprene manufacturing facility in LaPlace, Louisiana ("Denka Facility") during June 2016, and EPA issued an Information Request to Denka pursuant to Section 114(a) of the Clean Air Act, 42 U.S.C. § 7414(a), during June 2021.   *See id.* ¶¶ 50-51.   In February 2022, EPA issued a Request for Information to Denka pursuant to Section 3007 of the Resource Conservation and Recovery Act.   *Id.* ¶ 59.

In January 2022, private parties submitted several administrative complaints to EPA alleging that the Louisiana Department of Health and the Louisiana DEQ—not Denka—are violating Title VI of the Civil Rights Act.   *See id.* ¶ 65.   As a step to facilitate the informal resolution process with those Departments, EPA's Office of External Civil Rights Compliance issued a letter to the Secretary of the Louisiana Department of Health and to the Secretary of the Louisiana DEQ in October 2022.   *See id.* ¶¶ 66-67.   This civil rights investigation and resolution process is ongoing.

On February 28, 2023, EPA filed a civil complaint in the United States District Court for the Eastern District of Louisiana taking enforcement action against Denka under Section 303 of the Clean Air Act, 42 U.S.C. § 7603.   *United States v. Denka Performance Elastomers*, LLC, *et al.,* No. 2:23-cv-735 (E.D. La.).   In that case, EPA seeks injunctive relief based on allegations

that chloroprene emissions from the Denka Facility present an imminent and substantial endangerment to public health.

## VI.     HISTORY OF THIS LITIGATION

Denka filed its Complaint on January 11, 2023, asking this Court to review the 2010 Assessment and the Denials under Section 704 of the APA, 5 U.S.C. § 704.   More specifically, Denka seeks declarations that all of these actions were arbitrary and capricious based on allegations that EPA failed to consider what Denka believes to be the best available science. ECF 1, at 34 ¶¶ 1-3.   Denka also seeks an order not only remanding the 2010 Assessment, but also requiring EPA to issue a new assessment based on scientific information to be specified by the Court.   *Id.* ¶ 4.   Finally, Denka seeks an order enjoining EPA from relying on the 2010 Assessment in any context.   *Id.* ¶ 5.

## ARGUMENT

## I.     THE GOVERNMENT HAS SOVEREIGN IMMUNITY TO ALL OF DENKA'S CLAIMS.

The Court lacks subject matter jurisdiction over all of Denka's claims, because Denka has not identified an applicable statutory waiver of the government's sovereign immunity.   It is black-letter law that "the United States may not be sued except to the extent that it has consented to suit by statute," and "[w]here the United States has not consented to suit or the plaintiff has not met the terms of the statute the court lacks jurisdiction and the action must be dismissed." *Alabama-Coushatta Tribe of Tex.*, 757 F.3d at 488 (quoting *Koehler v. United States*, 153 F.3d 263, 266 (5th Cir. 1998); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

A waiver of sovereign immunity cannot be implied and must be unequivocally expressed by Congress in statutory text.   *Fort Bend Cty.*, 59 F.4th at 189; *FAA v. Cooper*, 566 U.S. 284, 290 (2012); *United States v. Nordic, Vill., Inc.,* 503 U.S. 30, 33-34 (1992); *United States v. Mitchell*, 445 U.S. at 538.   The scope of statutory waivers, including those in the APA, also must be "construed strictly in favor of the sovereign."   *Fort Bend Cty.*, 59 F.4th at 189 (citing *Alabama-Coushatta Tribe of Tex.*, 757 F.3d at 488 (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1992))); *Taylor Energy Co. LLC v. United States*, No. 20-1720, 2021 WL 1876845 *2 (E.D. La. May 10, 2021); *accord FDIC v. Meyer*, 510 U.S. at 475 ; *Dept. of Energy v. Ohio*, 503 U.S. 607, 615 (1993); *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261, 263 (1999); *United States v. Mitchell*, 463 U.S. at 212 (1983).   "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."   *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

No such waiver exists in 28 U.S.C. § 1331 and the Declaratory Judgment Act, the statutes that Denka points to in the Complaint.   There also is no waiver in the Information Quality Act, another statute that Denka discusses.   Moreover, APA Section 704 is not applicable, because Section 704 only provides (in pertinent part) for the review of "final agency action for which there is no other adequate remedy in a court."   5 U.S.C. § 704; *Fort Bend Cty.*, 59 F.4th at 189. For the reasons discussed below, the 2010 Assessment and Denials are not final agency actions for purposes of APA Sections 702 and 704.   APA Section 701(a)(2) also bars review of the Denials altogether, as "agency action is committed to agency discretion by law," regardless of

12

whether the Denials are deemed final agency action.   Consequently, the Court lacks subject

matter jurisdiction over all of Denka's APA claims and should dismiss them.

A.   **The Declaratory Judgment Act, 28 U.S.C. § 1331, and the Information Quality Act Do Not Contain Sovereign Immunity Waivers.**

The two statutes that Denka identifies in the Complaint as the source of the Court's

subject matter jurisdiction—28 U.S.C. § 1331 and the Declaratory Judgment Act—do not waive

the government's sovereign immunity.   *See* ECF 1, ¶ 7.   "[I]t is well settled that Section 1331

'implies no general waiver of sovereign immunity.'"   *Voluntary Purchasing*, 889 F.2d at 1385

(quoting *A.L. Rowan & Son, Gen. Contractors, Inc. v. Dep't of Hous. & Urban Dev.*, 611 F.2d

997, 1000 (5th Cir.1980)). Therefore, it cannot be relied upon by itself as the basis for

jurisdiction over a claim against the United States.   *Id.* at 1385.   The same is true for the

Declaratory Judgment Act, 28 U.S.C. § 2201, which creates a remedy for controversies over

which the courts have jurisdiction but does not contain a waiver of the government's sovereign

immunity.   *Anderson v. United States*, 229 F.2d 675, 677 (5th Cir. 1956); *see Balistrieri v.*

*United States*, 303 F.2d 617, 619 (7th Cir. 1962).

While Denka discusses the Information Quality Act extensively in the Complaint, that

statute does not create any cognizable cause of action, and does not contain any language that

could constitute a waiver of the government's sovereign immunity.   *See Miss. Comm'n on Env't*

*Quality,* 790 F.3d at 184-85 ("almost every court that has addressed an Information Quality Act

challenge has held that the statute 'creates no legal rights in any third parties'") (quoting *Salt*

*Inst.,* 440 F.3d at 159, and citing *Harkonen v. U.S. Dep't of Just.,* No. C 12–629, 2012 WL

6019571 *11 (N.D. Cal. Dec. 3, 2012) (collecting cases)).

13

**B.      Denka's Claims Do Not Fall within the APA's Waivers of Sovereign Immunity.**

Denka's claims also do not fall within the waiver of sovereign immunity in APA Sections

702 and 704.   These provisions only authorize judicial review of "*final* agency action for which

there is no other adequate remedy in a court."   5 U.S.C. §§ 702, 704 (emphasis added); *see Fort*

*Bend Cty.*, 59 F.4th at 189.   But IRIS assessments and the resolution of IQA requests to correct

them are not final agency actions within the meaning of the APA.   Denka's claims therefore do

not fall within the sovereign immunity waivers in Sections 702 and 704.

**1.      The 2010 Assessment and Denials Are Not Final Agency Actions for**
**Purposes of Judicial Review under the APA.**

In order to be final for purposes of judicial review under the APA, an agency action must:

(1) "mark the consummation of the agency's decisionmaking process…;" and (2) "be one by

which 'rights or obligations have been determined,' or from which legal consequences will

flow." *Bennett v. Spear,* 520 U.S. at 177–78; *Fort Bend Cty.*, 59 F.4th at 189 (citing *Lujan*, 497

U.S. at 882, and 5 U.S.C. § 704); *Texas v. United States*, 40 F.4th at 220 (quoting *Bennett v.*

*Spear*).

To the extent the 2010 Assessment "consummates" anything, it is EPA's scientific

research and consultation process regarding potential human health hazard posed by chloroprene,

and the Denials document EPA's determination how to exercise its discretion "to undertake only

the degree of correction that [EPA concludes] is appropriate for the nature and timeliness of the

information involved" in response to Denka's requests for correction and reconsideration under

the Information Quality Act.   *See* 67 Fed. Reg. 8452, 8458 (Feb. 22, 2002).   Neither the 2010

IRIS Assessment nor the Denials are reviewable under the APA, however.   IRIS assessments

are scientific research papers that do not themselves determine any rights or obligations, and no

14

legal consequences flow from the completion of IRIS assessments or their addition to the IRIS database.   The Denials, which only document EPA's evaluation of a request to exercise its discretion to modify the information in the 2010 Assessment, also do not determine any rights or obligations and no legal consequences from them.

a.      <strong>IRIS Assessments Do Not Have Any Legal Effect.</strong>

The core question raised by the second prong of the finality test in *Bennett v. Spear* is whether the agency action in question "gives rise to '*direct* and appreciable legal consequences.'"   *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016 (emphasis added) (quoting *Bennett v. Spear*, 520 U.S. at 178).   In other words, "[a] final agency action is one that imposes an obligation, denies a right, or fixes a legal relationship."   *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) (citing *U.S. Dep't of Just. v. Fed. Lab. Rel's Auth.,* 727 F.2d 481, 493 (5th Cir.1984)).

IRIS assessments simply do not satisfy this requirement.   They are purely informational research documents that do not compel anyone to do anything.   *Chem. Mfrs. Assoc.*, 28 F.3d at 1263 ("The [IRIS] database by itself has no preclusive effect; the data in the database constrain no one until so applied in a particular rule.").   Indeed, the IRIS database and the staff who develop the assessments that comprise it are part of EPA's Office of Research and Development, not any of the Agency's program offices that take final actions that legally bind persons to comply with specific requirements (*e.g.*, the Office of Air and Radiation, the Office of Enforcement and Compliance Assurance).   And no legal requirements or actions are dependent upon, or triggered by, the completion or addition of an assessment to the IRIS database.

15

To be sure, federal, state, and international agencies may use the *scientific information* contained in IRIS assessments to help screen for potential human health risks within their geographic or substantive authority, further evaluate such risks (if any), and decide whether to take regulatory or enforcement action.   But neither the completion of an assessment containing that information, nor the addition of that assessment to the IRIS database, requires that any such steps be taken—much less dictates the substance of such steps.   Agencies also are not precluded from taking such steps before an IRIS assessment is completed.

Indeed, the 2010 Assessment is closely analogous to the scientific research report that EPA issued under the Radon Act assessing potential health risks associated with second-hand smoke, which the U.S. Court of Appeals for the Fourth Circuit found to be non-final under the two-prong test in *Bennett v. Spear*.   *Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*, 313 F.3d 852 (4th Cir. 2002).   Like the 2010 Assessment, the second-hand smoke research report *itself* had no direct regulatory effect on anyone and did not create any legal rights or obligations. *Id.* at 855-56, 858-59.   For those reasons, and because "holding the report is subject to review under the APA would expose to immediate court review the various results of controversial governmental research as soon as published but before they are given regulatory effect, [the Fourth Circuit is] of [the] opinion and hold[s] that there has not been final agency action under 5 U.S.C. §§ 702 and 704."   *Id.* at 862; *see also Salt Inst. v. Thompson,* 345 F.Supp.2d 589, 602 (E.D. Va. 2004) (collecting cases).

The same is true for the closely analogous 2010 Assessment, and even more so for the Denials.   Indeed, the Denials do nothing more than document EPA's determination how to exercise its discretion "to undertake only the degree of correction that [EPA concludes] is

appropriate for the nature and timeliness of the information" in the 2010 Assessment.   *See* 67
Fed. Reg. at 8458.   A document like the 2010 Assessment that has no independent legal effect,
and purely discretionary evaluations of whether or not to change information in such an
underlying document like the Denials, simply cannot satisfy the second prong of the finality test
articulated in *Bennet v. Spear*.

### b. Third-Party Actions Have No Effect on Finality under the APA.

In its Complaint, Denka appears to contend that IRIS assessments impose sufficient legal
consequences to be "final action" because the State of Louisiana entered into a consent order
with Denka under which the company had to reduce its chloroprene emissions, and because
private individuals pointed to the NATA (which is only partially based on information in the
2010 Assessment) in an unsuccessful attempt to establish a duty of care in tort suits against
Denka.   ECF 1, ¶¶ 52, 56, 65-67.   The Louisiana DEQ did not purport to enforce the 2010
Assessment, however, and the private plaintiffs did not purport to base their claims on the 2010
Assessment itself.   And what state regulators and private individuals choose to do with the
information in an IRIS assessment does not change the nature of the assessment itself, and so
cannot make the IRIS assessment itself subject to judicial review under the APA.   *See Dalton v.
Specter*, 511 U.S. 462, 469-70 (1994) (commission's base closure recommendations not
reviewable because the only "action that will directly affect" targeted bases would be taken by
the President, who has discretion to accept or reject recommendations) (cleaned up); *Hindes v.
Fed. Deposit Ins. Corp.*, 137 F.3d 148, 162-63 (3d Cir. 1998) ("[W]here a state actor relies upon
a federal agency's notice, the state action does not convert the notice into a final agency act.");
*Flue-Cured Tobacco*, 313 F.3d at 860-61 (EPA scientific report not rendered final and

reviewable by state regulations promulgated in reliance on it, because regulations were "not direct consequences of the Report, but are the product of independent agency decisionmaking.").

### c. Federal Investigations Do Not Make Actions Final under the APA.

Denka argues that the 2010 Assessment somehow became reviewable when EPA requested information regarding, *inter alia*, the use of chloroprene at the Denka Facility under the Resource Conservation and Recovery Act ("RCRA"), conducted air monitoring to evaluate chloroprene levels in the vicinity, and wrote a letter during an ongoing civil rights investigation of Louisiana agencies.   ECF 1, ¶¶ 50-51, 53, 59.   This argument lacks merit.

A federal investigation, including the types of actions Denka complained of, does not constitute final agency action under the APA.   *Veldhoen*, 35 F.3d at 225 (citing *FTC v. Standard Oil Co.,* 449 U.S. 232, 239–45 (1980)); *Manchanda v. Lewis*, No. 21-1088, 2021 WL 5986877 *6 (2d Cir. Dec. 17, 2021) (citing *Veldhoen* and *Standard Oil Co.*)).   Instead, those being investigated must wait until the agency concludes its efforts and (if necessary) challenge the agency's final determination or defend themselves in any enforcement action.   *Veldhoen*, 35 F.3d at 225 (citing *Standard Oil,* 449 U.S. at 244–45).   This is unsurprising, since investigations may reveal that no violations are taking place, or an agency may choose not to take enforcement action for other reasons.   Because EPA investigations are not final agency action, any use of information from the 2010 Assessment and Denials did not somehow make the 2010 Assessment and Denials final for purposes of judicial review under the APA.

18

  **d.**  **EPA's Recently-Filed Clean Air Act Enforcement Action Does Not Make the 2010 Assessment and Denials Final for APA Review Purposes.**

  The Clean Air Act enforcement action that EPA filed on February 28, 2023 (hereafter "CAA Enforcement Case"), did not somehow make the 2010 Assessment and Denials final and judicially reviewable, either. *See United States v. Denka Performance Elastomer, LLC*, Case No. 23-cv-35 (E.D. La.). Instead, to the extent EPA relies on scientific information contained in the challenged 2010 Assessment in the CAA Enforcement Case, Denka may choose to defend itself *in that separate case* by challenging EPA's reliance on that information. Similarly, whenever a federal agency issues a final rule based in part on information from the 2010 Assessment, Denka can challenge that agency's use of information from the 2010 Assessment information in a challenge to the final rule.

  A dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is not a judgment on the merits of the plaintiff's substantive claims, and so does not have a *res judicata* effect. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir. 1998) (citing *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996)). Thus, dismissing Denka's claims in this case for lack of jurisdiction would not affect Denka's ability to argue in defense of the enforcement action, or in a future rulemaking challenge, that EPA had inappropriately relied on information in the 2010 Assessment.

For all of the reasons above, the 2010 Assessment and Denials are not final for purposes of judicial review under the APA.[2]   On this basis alone, all of Denka's claims fall outside APA Section 704, and the Court should dismiss them for lack of subject matter jurisdiction.

### 2.   APA Section 701(a)(2) Precludes Judicial Review of the Denials.

Finally, even if the Court finds (or assumes) that the Denials were final, this Court still would lack subject matter jurisdiction to review them.   APA Section 701(a)(2), 5 U.S.C. § 701(a)(2), expressly provides that the APA does not apply to agency actions that are committed to agency discretion by law.   Agency action, in turn, "is committed to agency discretion by law when 'the statute [pursuant to which the action is taken] is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'"   *Steenholdt v. FAA,* 314 F.3d 633, 638 (D.C. Cir. 2003) (quoting *Heckler v. Chaney,* 470 U.S. 821, 830 (1985)).

Because the Information Quality Act and the implementing White House Office of Management and Budget Guidelines do not "provide judicially manageable standards that would allow meaningful judicial review to determine whether an agency properly exercised its discretion in deciding a request to correct a prior communication," the courts have found that APA Section 701(a)(1)(2) bars APA review of agency denials of Information Quality Act

---

[2]  For the same reasons they do not satisfy the finality test, the 2010 Assessment and Denials arguably are not "agency actions" to begin with, as that term is defined in the APA.   5 U.S.C. §§ 551, 701(b)(2).   "Agency actions" are "circumscribed, discrete," and narrowly defined in the statute as "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof."   5 U.S.C. §§ 551(13); *see Fort Bend Cty*., 59 F.4th at 189 (citing 5 U.S.C. § 551(13)); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).   The 2010 Assessment and Denials do not fall within the definitions of, and are not equivalent to, any of those actions.   *See* 5 U.S.C. § 551(4), (6), (8), (10), (11); *see Norton*, 542 U.S. at 62.

requests for correction or reconsideration.   *Fam. Farm All. v. Salazar*, 749 F.Supp.2d at 1092-95 (quoting *Salt Inst.,* 345 F.Supp.2d 589 (E.D.Va. 2004), *aff'd sub nom. on alternate grounds, Salt Inst.,* 440 F.3d 156); *Styrene Info. and Resch. Ctr, Inc.*, 944 F.Supp.2d at 82 (quoting *Salt Inst.* and *Fam. Farm All.*); *Muslim Advoc. v. U.S. Dep't of Just.*, No. 18-cv-02137-JSC, 2019 WL 3254230 **7-11 (N.D. Cal. July 19, 2019); *Harkonen v. U.S. Dep't of Just.*, 2012 WL 6019571 at *16, *aff'd on other grounds*, 800 F.3d 1143 (9th Cir. 2015);  *Ams. for Safe Access v. U.S. Dep't of Health & Hum. Servs.*, No. C 07-01049 WHA, 2007 WL 4168511, at *4 (N.D. Cal. Nov. 20, 2007), *aff'd on other grounds*, 399 F. App'x 314 (9th Cir. 2010); *In re Operation of the Mo. River Sys. Litig.*, 363 F.Supp.2d 1145, 1175 (D. Minn. 2004) (same), *aff'd in part and vacated in part on other grounds*, 421 F.3d 618 (8th Cir. 2005); *see, e.g.,* 67 Fed. Reg. 8452, 8458 (Feb. 22, 2002) ("Agencies, in making their determination of whether or not to correct information . . . are required to undertake only the degree of correction that they conclude is appropriate for the nature and timeliness of the information involved.").   For this independent reason, Denka's claim challenging the Denials does not fall within an APA waiver of sovereign immunity and should be dismissed for lack of subject matter jurisdiction even if the Denials are found to be final agency actions.

## II.   ALL APA CHALLENGES TO THE 2010 ASSESSMENT ARE NOW TIME BARRED, IF ONE ASSUMES THAT THE 2010 ASSESSMENT IS A FINAL AGENCY ACTION UNDER THE APA.

Finally, even if the Court were to find (or assume) that the 2010 Assessment is a final agency action for purposes of the APA, then all APA challenges to it have been time barred since September 2016.   The Court therefore lacks subject matter jurisdiction over Denka's three

claims challenging the 2010 Assessment and should dismiss them.   *Am. Stewards of Liberty*,

960 F.3d at 229 & n.3 (5th Cir. 2020).

As discussed above, no APA claim accrued when the 2010 Assessment was finalized and

added to the IRIS database, because IRIS assessments are not reviewable under the APA.   If the

Court finds or assumes otherwise, however, then the applicable six-year statute of limitations in

28 U.S.C. § 2401 began to run in September 2010.   *Dunn-McCampbell Royalty Int., Inc. v. Nat'l*

*Park Serv.*, 112 F.3d 1283, 1286-87 (5th Cir. 1997); *Am. Stewards of Liberty*, 960 F.3d at 229 &

n.3 (statute of limitations for APA claims is six years from the time the claim accrues)

(citing *Dunn-McCampbell*, 112 F.3d at 1286); *Ades v. United States*, No. 22-100442, 2022 WL

1198206 *1 (5th Cir. Apr. 22, 2022).

In this scenario, the statute of limitations governing Denka's three claims challenging the

2010 Assessment expired in September 2016.   Moreover, for this specific cause of action

"failure to sue the United States within the limitations period is not merely a waivable defense.

It operates to deprive federal courts of jurisdiction."   *Am. Stewards of Liberty,* 960 F.3d at

229 (quoting *Dunn-McCampbell*, 112 F.3d at 1287, and *Sisseton–Wahpeton Sioux Tribe v.*

*United States*, 895 F.2d 588, 592 (9th Cir. 1990)).   The Court therefore lacks subject matter

jurisdiction over Denka's three claims purporting to challenge the 2010 Assessment under the

APA and should dismiss them with prejudice.

## **CONCLUSION**

For the foregoing reasons, this case should be dismissed with prejudice under Fed. R. Civ.

P. 12(b)(1).

22

Respectfully submitted,

Dated:   March 20, 2023                    /s/ Heather E. Gange
                                           HEATHER E. GANGE
                                           D.C. Bar No. 452615
                                           United States Department of Justice
                                           Environment and Natural Resources Division
                                           Environmental Defense Section
                                           P.O. Box 7611
                                           Washington, D.C. 20044
                                           (202) 514-4206
                                           Heather.Gange@usdoj.gov

23